ORIGINAL
FILED

07 SEP 20  PM 2:47

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   Matthew Franklin Jaksa (CA State Bar No. 248072)
    HOLME ROBERTS & OWEN LLP
2   560 Mission Street, 25th Floor
    San Francisco, CA  94105-2994
3   Telephone:   (415) 268-2000
    Facsimile:   (415) 268-1999
4   Email:       matt.jaksa@hro.com
5
6   Attorneys for Plaintiffs,
    LAFACE RECORDS LLC; UMG
7   RECORDINGS, INC.; and SONY BMG
    MUSIC ENTERTAINMENT
8

EMC

9              UNITED STATES DISTRICT COURT
10            NORTHERN DISTRICT OF CALIFORNIA
11

C 07      4839

12  LAFACE RECORDS LLC, a Delaware limited    CASE NO.
    liability company; UMG RECORDINGS, INC.,
13  a Delaware corporation; and SONY BMG       MEMORANDUM OF LAW IN SUPPORT
    MUSIC ENTERTAINMENT, a Delaware            OF *EX PARTE* APPLICATION FOR LEAVE
14  general partnership,                       TO TAKE IMMEDIATE DISCOVERY
15                      Plaintiffs,
16        v.
17
18  JOHN DOE #5,
                        Defendant.
19
20
21
22
23
24
25
26
27
28

Memorandum of Law in Support of *Ex Parte* Application for Leave to Take Immediate Discovery
Case No.
#32472 v1

## I.    INTRODUCTION

Plaintiffs, record companies who own the copyrights in the most popular sound recordings in the United States, seek leave of the Court to serve limited, immediate discovery on a third party Internet Service Provider ("ISP") to determine the true identity of Defendant John Doe # 5 ("Defendant"), who is being sued for direct copyright infringement. Without such discovery, Plaintiffs cannot identify Defendant, and thus cannot pursue their lawsuit to protect their copyrighted works from repetitive, rampant infringement.[1]

As alleged in the complaint, Defendant, without authorization, used an online media distribution system (*e.g.*, a peer-to-peer or "P2P" system) to download Plaintiffs' copyrighted works and/or distribute copyrighted works to the public. See Declaration of Carlos Linares ("Linares Decl."), ¶ 18 (attached hereto as Exhibit A). Although Plaintiffs do not know the true name of Defendant,[2] Plaintiffs have identified Defendant by a unique Internet Protocol ("IP") address assigned to Defendant on the date and at the time of Defendant's infringing activity. Id. Additionally, Plaintiffs have gathered evidence of the infringing activities. Id. ¶¶ 14-15, 19. Plaintiffs have downloaded a sample of several of the sound recordings Defendant illegally distributed and have evidence of every file (numbering in the thousands) that Defendant illegally distributed to the public. Id.

Plaintiffs have identified the ISP that provided Internet access to Defendant by using a publicly available database to trace the IP address for Defendant. Id. ¶¶ 12, 18. Here, the ISP is Santa Clara University ("Santa Clara"). Id. When given a Defendant's IP address and the date and time of infringement, an ISP quickly and easily can identify the name and address of a Doe Defendant (*i.e.,* the ISP's subscriber) because that information is contained in the ISP's subscriber activity log files. Id. ¶ 16.[3] Plaintiffs' experience is that ISPs typically keep log files of subscriber

---

[1] Because Plaintiffs do not currently know the identity of the Defendant, Plaintiffs cannot ascertain the Defendant's position on this *Ex Parte* Application.

[2] When using a P2P system (*e.g.*, Ares, eDonkey, Gnutella, BitTorrent, or DirectConnect), a Defendant typically uses monikers or user names, and not his true name. Linares Decl., ¶ 10. Plaintiffs have no ability to determine a Defendant's true name other than by seeking the information from the ISP. Id. ¶¶ 10, 16.

[3] ISPs own or are assigned certain blocks or ranges of IP addresses. A subscriber gains access to the Internet through an ISP after setting up an account with the ISP. An ISP then assigns a particular IP address in its block or range

1

1  activities for only limited periods of time – which can range from as short as a few days, to a few

2  months – before erasing the data. Id. ¶ 24. Plaintiffs alert the ISP to the existence of the copyright

3  claims shortly after identifying the infringing activity and ask the ISP to maintain the log files.

4      Plaintiffs now seek leave of the Court to serve limited, immediate discovery on Santa Clara

5  to identify Defendant. Plaintiffs intend to serve a Rule 45 subpoena on Santa Clara seeking

6  documents that identify Defendant's true name, current (and permanent) addresses and telephone

7  numbers, e-mail addresses, and Media Access Control ("MAC") addresses. Once Plaintiffs learn

8  Defendant's identifying information, Plaintiffs will attempt to contact Defendant and attempt to

9  resolve the dispute. If the dispute is not resolved and it is determined that it would be more

10 appropriate to litigate the copyright infringement claims in another jurisdiction, Plaintiffs will

11 dismiss the present lawsuit and re-file in the appropriate jurisdiction. Without the ability to obtain

12 the Defendant's identifying information, however, Plaintiffs may never be able to pursue their

13 lawsuit to protect their copyrighted works from repeated infringement. Id. ¶ 24. Moreover, the

14 infringement may be ongoing such that immediate relief is necessary. Thus, the need for the limited,

15 immediate discovery sought in this *Ex Parte* Application is critical.

16 **II.    BACKGROUND**

17     The Internet and P2P networks have spawned an illegal trade in copyrighted works. See

18 MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 923 (U.S. 2005). By downloading P2P software,

19 and logging onto a P2P network, an individual can upload (distribute) or download (copy), without

20 authorization, countless copyrighted music and video files to or from any other P2P network user

21 worldwide. See id. at 920 (detailing the process used by infringers to download copyrighted works);

22 A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1014 (9th Cir. 2001) (stating that infringers use

23 P2P networks to copy and distribute copyrighted works); Universal City Studios, Inc. v. Reimerdes,

24 111 F. Supp. 2d 294, 331 (S.D.N.Y.), aff'd sub nom., Universal City Studios, Inc. v. Corley, 273

25 F.3d 429 (2d Cir. 2001) (describing a viral system, in which the number of infringing copies made

26 available multiplies rapidly as each user copying a file also becomes a distributor of that file). Until

27

28 to the subscriber when that subscriber goes "online." After reviewing the subscriber activity logs (which contain the assigned IP addresses), an ISP can identify its subscribers by name. Linares Decl., ¶ 16.

2

1   enjoined, Napster was the most notorious online media distribution system. <u>Grokster</u>, 545 U.S. at

2   924. Notwithstanding the <u>Napster</u> Court's decision, similar online media distribution systems

3   emerged that have attempted to capitalize on the growing illegal market that Napster fostered. These

4   include Ares, KaZaA, eDonkey, BitTorrent, DirectConnect, and Gnutella, among others. Linares

5   Decl., ¶ 6. Despite the continued availability of such systems, there is no dispute that the uploading

6   and downloading of copyrighted works without authorization is copyright infringement. <u>Napster</u>,

7   239 F.3d at 1014-15; <u>In re Aimster Copyright Litig.</u>, 334 F.3d 643 (7th Cir. 2003), <u>cert. denied</u>, 124

8   S. Ct. 1069 (2004). Nonetheless, at any given moment, millions of people illegally use online media

9   distribution systems to upload or download copyrighted material. Linares Decl., ¶ 6. More than 2.6

10  *billion* infringing music files are downloaded monthly. L. Grossman, *It's All Free*, Time, May 5,

11  2003, at 60-69.

12      The propagation of illegal digital copies over the Internet significantly harms copyright

13  owners, and has had a particularly devastating impact on the music industry. Linares Decl., ¶ 9. The

14  RIAA member companies lose significant revenues on an annual basis due to the millions of

15  unauthorized downloads and uploads of well-known recordings that are distributed on P2P networks.

16  <u>Id.</u> ¶ 9. Evidence shows that the main reason for the precipitous drop in revenues is that individuals

17  are downloading music illegally for free, rather than buying it. <u>See</u> <u>In re Aimster Copyright Litig.</u>,

18  334 F.3d at 645.

19  **III.    ARGUMENT**

20      Courts, including this circuit, routinely allow discovery to identify "Doe" defendants. <u>See</u>

21  <u>Wakefield v. Thompson</u>, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants

22  given possibility that identity could be ascertained through discovery); <u>Valentin v. Dinkins</u>, 121 F.3d

23  72, 75-76 (2d Cir. 1997) (vacating dismissal; *pro se* plaintiff should have been permitted to conduct

24  discovery to reveal identity of the defendant); <u>Dean v. Barber</u>, 951 F.2d 1210, 1215 (11th Cir. 1992)

25  (error to deny the plaintiff's motion to join John Doe defendant where identity of John Doe could

26  have been determined through discovery); <u>Munz v. Parr</u>, 758 F.2d 1254, 1257 (8th Cir. 1985) (error

27  to dismiss claim merely because the defendant was unnamed; "Rather than dismissing the claim, the

28  court should have ordered disclosure of the Officer Doe's identity"); <u>Maclin v. Paulson</u>, 627 F.2d 83,

---

3

1  87 (7th Cir. 1980) (where "party is ignorant of defendants' true identity . . . plaintiff should have

2  been permitted to obtain their identity through limited discovery").

3       Indeed, in similar copyright infringement cases brought by Plaintiffs, and/or other record

4  companies, against Doe defendants for infringing copyrights over P2P networks, many courts,

5  including this Court, have granted Plaintiffs' motions for leave to take expedited discovery. See,

6  e.g., Order, Maverick Recording Co. v. Does 1-4, Case No. C-04-1135 MMC (N.D. Cal. April 28,

7  2004); Order, Arista Records LLC v. Does 1-16, No. 07-1641 LKK EFB (E.D.Cal. Aug. 23, 2007);

8  Order, Sony BMG Music Ent't v. Does 1-16, No. 07-cv-00581-BTM-AJB (S.D. Cal. Apr. 19, 2007);

9  Order, UMG Recordings, Inc. v. Does 1-2, No. CV04-0960 (RSL) (W.D. Wash. May 14, 2004);

10  Order, Loud Records, LLC v. Does 1-5, No. CV-04-0134-RHW (E.D. Wash. May 10, 2004); Order,

11  London-Sire Records, Inc. v. Does 1-4, No. CV 04-1962 ABC (AJWx) (C.D. Cal. Apr. 2, 2004);

12  Order, Interscope Records. v. Does 1-4, No. CV-04-131 TUC-JM (D. Ariz. Mar. 25, 2004) (true and

13  correct copies of these Orders are attached hereto as Exhibit B). This Court should not depart from

14  its well-reasoned decisions, or the well-reasoned decisions of other courts that have addressed this

15  issue directly.

16       Courts allow parties to conduct expedited discovery in advance of a Rule 26(f) conference

17  where the party establishes "good cause" for such discovery. See UMG Recordings, Inc., 2006 U.S.

18  DIST. LEXIS 32821 (N.D. Cal. Mar. 6, 2000); Qwest Comm. Int'l, Inc. v. WorldQuest Networks,

19  Inc., 213 F.R.D. 418, 419 (D. Colo. 2003); Entertainment Tech. Corp. v. Walt Disney Imagineering,

20  No. Civ. A. 03-3546, 2003 WL 22519440, at *4 (E.D. Pa. Oct. 2, 2003) (applying a reasonableness

21  standard); Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-76 (N.D. Cal. 2002);

22  Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 613-14 (D. Ariz. 2001)

23  (applying a good cause standard). Plaintiffs easily have met this standard.

24       First, good cause exists where, as here, the complaint alleges claims of infringement. See

25  Semitool, 208 F.R.D. at 276; Qwest Comm., 213 F.R.D. at 419 ("The good cause standard may be

26  satisfied . . . where the moving party has asserted claims of infringement and unfair competition.");

27  Benham Jewelry Corp. v. Aron Basha Corp., No. 97 CIV 3841, 1997 WL 639037, at *20 (S.D.N.Y.

28  Oct. 14, 1997). This is not surprising, since such claims necessarily involve irreparable harm to the

4

1    plaintiff. 4 Melville B. Nimmer & David Nimmer, Nimmer On Copyright § 14.06[A], at 14-103

2    (2003); see also Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1034, 1042 (8th Cir. 2003);

3    Health Ins. Ass'n of Am. v. Novelli, 211 F. Supp. 2d 23, 28 (D.D.C. 2002) ("A copyright holder [is]

4    presumed to suffer irreparable harm as a matter of law when his right to the exclusive use of

5    copyrighted material is invaded.") (quotations and citations omitted); ABKCO Music, Inc. v. Stellar

6    Records, Inc., 96 F.3d 60, 66 (2d Cir. 1996).

7            Second, good cause exists here because there is very real danger the ISP will not long

8    preserve the information that Plaintiffs seek. As discussed above, ISPs typically retain user activity

9    logs containing the information sought for only a limited period of time before erasing the data.

10    Linares Decl., ¶ 24. If that information is erased, Plaintiffs will have *no* ability to identify

11    Defendant, and thus will be unable to pursue their lawsuit to protect their copyrighted works. Id.

12    Where "physical evidence may be consumed or destroyed with the passage of time, thereby

13    disadvantaging one or more parties to the litigation," good cause for expedited discovery exists. See

14    Qwest Comm., 213 F.R.D. at 419; Pod-Ners, LLC v. Northern Feed & Bean, 204 F.R.D. 675, 676

15    (D. Colo. 2002) (allowing the plaintiff expedited discovery to inspect "beans" in the defendant's

16    possession because the beans might no longer be available for inspection if discovery proceeded in

17    the normal course).

18            Third, good cause exists because the narrowly tailored discovery requests do not exceed the

19    minimum information required to advance this lawsuit and will not prejudice Defendant. See

20    Semitool, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in

21    consideration of the administration of justice, outweighs the prejudice to the responding party.").

22    Plaintiffs seek immediate discovery to identify Defendant; information that may be erased very soon.

23    Plaintiffs (who continue to be harmed by Defendant's copyright infringement, Linares Decl., ¶ 9),

24    cannot wait until after the Rule 26(f) conference (ordinarily a prerequisite before propounding

25    discovery) because there are no known defendants with whom to confer (and thus, no conference is

26    possible). There is no prejudice to Defendant because Plaintiffs merely seek information to identify

27    Defendant and to serve him, and Plaintiffs agree to use the information disclosed pursuant to their

28    subpoenas only for the purpose of protecting their rights under the copyright laws.

5

1    Fourth, courts regularly grant expedited discovery where such discovery will "substantially

2    contribute to moving th[e] case forward." Semitool, 208 F.R.D. at 277. Here, the present lawsuit

3    cannot proceed without the limited, immediate discovery Plaintiffs seek because there is no other

4    information Plaintiffs can obtain about Defendant without discovery from the ISP. As shown by the

5    Declaration of Carlos Linares, Plaintiffs already have developed a substantial case on the merits

6    against each infringer. Plaintiffs' complaint alleges a *prima facie* claim for direct copyright

7    infringement. Plaintiffs have alleged that they own and have registered the copyrights in the works

8    at issue, and that Defendant copied or distributed those copyrighted works without Plaintiffs'

9    authorization. See Complaint. These allegations state a claim of copyright infringement. Nimmer

10   On Copyright § 31.01, at 31-3 to 31-7; Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340,

11   361 (1991). In addition, Plaintiffs have copies of a sample of several of the sound recordings that

12   Defendant illegally distributed to the public and have evidence of every file that Defendant illegally

13   distributed to the public. See Complaint Ex. A; Linares Decl., ¶¶ 18-19. This more complete list

14   shows hundreds of files, many of them sound recordings (MP3 files) that are owned by, or

15   exclusively licensed to, Plaintiffs. See Linares Decl., ¶ 19. Plaintiffs believe that virtually all of the

16   sound recordings have been downloaded and/or distributed to the public without permission or

17   consent of the respective copyright holders. Id. Absent limited, immediate discovery, Plaintiffs will

18   be unable to obtain redress for any of this infringement.

19    Finally, Plaintiffs request that the Court make clear that Santa Clara's response to the

20   subpoena is consistent with its obligations under the Family Educational Rights and Privacy Act, 20

21   U.S.C. 1232g ( "FERPA"). Though FERPA generally prohibits disclosure of certain records by

22   federally-funded educational institutions, it *expressly* provides that information can be disclosed

23   pursuant to court order. *See* 20 U.S.C. § 1232g(b)(2)(B). While Plaintiffs do not believe FERPA

24   prevents the disclosure of the information requested in the subpoena,[4] universities and colleges have

25   expressed concern about their obligations under FERPA, and some have taken the position that a

26

27   _____

28   [4] Plaintiffs do not concede that FERPA prevents Santa Clara University, from disclosing the type of information
being requested by Plaintiffs, but believe that a properly framed court order will make resolution of that issue
unnecessary.

Memorandum of Law in Support of *Ex Parte* Application for Leave to Take Immediate Discovery
Case No.
#32472 v1

1  court order is required before they will disclose subscriber information.  Hence, Plaintiffs seek an

2  appropriate order explicitly authorizing Santa Clara to comply with the subpoena.

3      If the Court grants this *Ex Parte* Application, Plaintiffs will serve a subpoena on Santa Clara

4  requesting documents that identify the true name and other information about Defendant within 15

5  business days.  Santa Clara then will be able to notify its subscriber that this information is being

6  sought, and Defendant will be able to raise any objections before this Court in the form of a motion

7  to quash prior to the return date of the subpoena.  Thus, to the extent that Defendant wishes to object,

8  he or she will be able to do so.

9  **IV.    CONCLUSION**

10      For the foregoing reasons, the Court should grant the *Ex Parte* Application and enter an

11  Order substantially in the form of the attached Proposed Order.

12  Dated:  September 20, 2007                    HOLME ROBERTS & OWEN LLP

13

14                                              By: _____

15                                                  MATTHEW FRANKLIN JAKSA
                                                    Attorney for Plaintiffs
16                                                  LAFACE RECORDS LLC; UMG
                                                    RECORDINGS, INC.; and SONY BMG
17                                                  MUSIC ENTERTAINMENT

18

19

20

21

22

23

24

25

26

27

28

1

2

**EXHIBIT A**

3

4

Matthew Franklin Jaksa (State Bar No. 248072)

5

HOLME ROBERTS & OWEN LLP
560 Mission Street, 25th Floor

6

San Francisco, CA  94105-2994
Telephone:   (415) 268-2000

7

Facsimile:   (415) 268-1999
E-mail: matt.jaksa@hro.com

8

9

Attorney for Plaintiffs

10

LAFACE RECORDS LLC; UMG
RECORDINGS, INC.; and SONY BMG MUSIC

11

ENTERTAINMENT

UNITED STATES DISTRICT COURT

12

NORTHERN DISTRICT OF CALIFORNIA

13

14

SAN FRANCISCO DIVISION

15

| LAFACE RECORDS LLC, a Delaware limited liability company; UMG RECORDINGS, INC., a Delaware corporation; and SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership,, | Case No. _____ |
|---|---|
| | **DECLARATION OF CARLOS LINARES IN SUPPORT OF *EX PARTE* APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY** |

16

17

18

19

          Plaintiff,
     v.

20

JOHN DOE # 5,

21

          Defendant.

22

23

24

25

26

27

28

1

**DECLARATION OF CARLOS LINARES IN
SUPPORT OF EX PARTE APPLICATION FOR LEAVE
TO TAKE IMMEDIATE DISCOVERY**

1

2          I, Carlos Linares, have personal knowledge of the facts stated below and, under penalty

3  of perjury, hereby declare:

4          1.    I am Vice President, Anti-Piracy Legal Affairs for the Recording Industry

5  Association of America, Inc. ("RIAA"), where I have been employed for over six years. My office is

6  located at 1025 F Street, N.W., 10th Floor, Washington, DC 20004. I submit this Declaration in

7  support of Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery.

8          2.    As Vice President, Anti-Piracy Legal Affairs, I am responsible for evaluating

9  and contributing to online strategies for the RIAA, including oversight of the investigations into online

10  infringement of copyrighted sound recordings. As such, this Declaration is based on my personal

11  knowledge, and if called upon to do so, I would be prepared to testify as to its truth and accuracy.

12  **The RIAA's Role in Protecting Its Member Recording Industry Companies From Copyright**

                          **Infringement**

13

14          3.    The RIAA is a not-for-profit trade association whose member record companies

15  create, manufacture, and/or distribute approximately ninety percent of all legitimate sound recordings

16  produced and sold in the United States. The RIAA's member record companies comprise the most

17  vibrant national music industry in the world. A critical part of the RIAA's mission is to assist its

18  member companies in protecting their intellectual property in the United States and in fighting against

19  online and other forms of piracy. All of the Plaintiffs in this action are members of the RIAA.

20          4.    As part of that process, the RIAA, on behalf of its members, retains a variety of

21  services from outside vendors to assist with its investigation of the unauthorized reproduction and

22  distribution of copyrighted sound recordings online.

23                        **The Internet and Music Piracy**

24

25          5.    The Internet is a vast collection of interconnected computers and computer

    networks that communicate with each other. It allows hundreds of millions of people around the world

26

    to communicate freely and easily and to exchange ideas and information, including academic research,

27

28                          2      **DECLARATION OF CARLOS LINARES IN**
                                          **SUPPORT OF EX** PARTE **APPLICATION FOR LEAVE**
                                            **TO TAKE IMMEDIATE DISCOVERY**

literary works, financial data, music, movies, graphics, and an unending and ever-changing array of other data. Unfortunately, the Internet also has afforded opportunities for the wide-scale piracy of copyrighted sound recordings and musical compositions. Once a sound recording has been transformed into an unsecured digital format, it can be copied further and distributed an unlimited number of times over the Internet, without significant degradation in sound quality.

6.    Much of the unlawful distribution of copyrighted sound recordings over the Internet occurs via "peer-to-peer" ("P2P") file copying networks or so-called online media distribution systems. The most notorious example of such a system was Napster, which was enjoined by a federal court. Notwithstanding the court's decision enjoining Napster, similar online media distribution systems emerged and attempted to capitalize on the growing illegal market that Napster fostered. These include KaZaA, eDonkey, iMesh, Ares, BitTorrent, DirectConnect, and Gnutella, among others. To this day, some P2P networks continue to operate and to facilitate widespread copyright piracy. At any given moment, millions of people illegally use online media distribution systems to upload or download copyrighted material.

7.    P2P networks, at least in their most popular form, refer to computer systems or processes that enable Internet users to: (1) make files (including audio recordings) stored on a computer available for copying by other users; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet. P2P networks enable users who otherwise would have no connection with, or knowledge of, each other to offer to each other for distribution and copying files off of their personal computers, to provide a sophisticated search mechanism by which users can locate these files for downloading, and to provide a means of effecting downloads.

8.    The major record companies generally have not authorized their copyrighted sound recordings to be copied or distributed in unsecured formats by means of P2P networks. Thus, the vast majority of the content that is copied and distributed on P2P networks is unauthorized by the copyright owner – that is, the distribution violates the copyright laws.

3        DECLARATION OF CARLOS LINARES IN
SUPPORT OF EX PARTE APPLICATION FOR LEAVE
TO TAKE IMMEDIATE DISCOVERY

9.     The scope of online piracy of copyrighted works cannot be underestimated.  The RIAA member companies lose significant revenues on an annual basis due to the millions of unauthorized downloads and uploads of well-known recordings that are distributed on P2P networks by infringers who, in virtually all cases, have the ability to maintain their anonymity to all but the Internet Service Provider ("ISP") they use to supply them with access to the Internet.

10.     The persons who commit infringements by using the P2P networks are, by and large, anonymous to Plaintiffs.  A person who logs on to a P2P network is free to use any alias (or computer name) whatsoever, without revealing his or her true identity to other users.  Thus, Plaintiffs can observe the infringement occurring on the Internet, but do not know the true names or mailing addresses of those individuals who are committing the infringement.

### The RIAA's Identification of Copyright Infringers

11.     In order to assist its members in combating copyright piracy, the RIAA retained a third-party investigator, MediaSentry, Inc. ("MediaSentry"), to conduct searches of the Internet, as well as file-copying services, for infringing copies of sound recordings whose copyrights are owned by RIAA members.  A search can be as simple as logging onto a P2P network and examining what files are being offered by others logged onto the network.  In gathering evidence of copyright infringement, MediaSentry uses the same functionalities that are built into P2P programs that any user of the software can use on the network.

12.     Users of P2P networks who distribute files over a network can be identified by using Internet Protocol ("IP") addresses because the unique IP address of the computer offering the files for distribution can be captured by another user during a search or a file transfer.  Users of P2P networks can be identified by their IP addresses because each computer or network device (such as a router) that connects to a P2P network must have a unique IP address within the Internet to deliver files from one computer or network device to another.  Two computers cannot effectively function if they are connected to the Internet with the same IP address at the same time.  This is analogous to the telephone system where each location has a unique number.  For example, in a particular home, there

4

DECLARATION OF CARLOS LINARES IN
SUPPORT OF EX PARTE APPLICATION FOR LEAVE
TO TAKE IMMEDIATE DISCOVERY

may be three or four different telephones, but only one call can be placed at a time to or from that home. Each computer or network device is connected to a network that is administered by an organization like a business, ISP, college, or university. Each network, in turn, is analogous to an area code. The network provider maintains a log of IP address allocations. An IP address can be associated with an organization such as an ISP, business, college, or university, and that organization can identify the P2P network user associated with the specified IP address.

13.    MediaSentry finds individuals using P2P networks to share music files over the Internet. Just as any other user on the same P2P networks as these individuals would be able to do, MediaSentry is able to detect the infringement of copyrighted works and identify the users' IP addresses because the P2P software being used by those individuals has file-sharing features enabled.

14.    For each suspected infringer, MediaSentry downloads a number of the music files that the individual is offering to other users on the P2P network. Those music files for each such individual are listed in Exhibit A to the Complaint. MediaSentry assigns an identification number to each individual for which it detects copyright infringement and gathers additional evidence for each individual, such as metadata accompanying each file being disseminated that demonstrates that the user is engaged in copyright infringement. That evidence includes download data files that show for each music file the source IP address, user logs that include a complete listing of all files in the individual's share folder at the time, and additional data that track the movement of the files through the Internet.

15.    After MediaSentry collects the evidence of infringement, the RIAA engages in a painstaking process to verify whether each individual was infringing. That process relies on human review of evidence supporting the allegation of infringement. For each suspected infringer, the RIAA reviews a listing of the music files that the user has offered for download by others from his or her computer in order to determine whether they appear to be copyrighted sound recordings. The RIAA also listens to the downloaded music files from these users in order to confirm that they are, indeed, illegal copies of sound recordings whose copyrights are owned by RIAA members. Exhibit A to the

5

**DECLARATION OF CARLOS LINARES IN
SUPPORT OF EX PARTE APPLICATION FOR LEAVE
TO TAKE IMMEDIATE DISCOVERY**

Complaint lists the details of these downloaded music files. In my role as Vice President, Anti-Piracy, I provide oversight over the review of the lists contained in Exhibit A to the Complaint and hereby attest to the veracity of those lists. The RIAA also reviews the other evidence collected by MediaSentry.

### The Subpoena Process to Identify Copyright Infringers

16.    The RIAA frequently has used the subpoena processes of Federal Rule of Civil Procedure 45 and the Digital Millennium Copyright Act ("DMCA") to obtain the names of infringers from ISPs. The RIAA typically has included in their subpoenas to ISPs an IP address and a date and time on which the RIAA, through its agent, MediaSentry, observed use of the IP address in connection with allegedly infringing activity. In some instances, providing the IP address alone to the ISP has been enough to enable the ISP to identify the infringer. Providing the date and time further assists some ISPs in identifying infringers, especially ISPs that use "dynamic IP addressing" such that a single computer may be assigned different IP addresses at different times, including, for example, each time it logs into the Internet.[1] Once provided with the IP address, plus the date and time of the infringing activity, the infringer's ISP quickly and easily can identify the computer from which the infringement occurred (and the name and address of the subscriber that controls that computer), sometimes within a matter of minutes.

17.    Since 1998, the RIAA and others have used subpoenas thousands of times to learn the names, addresses, telephone numbers, and e-mail addresses of infringers for the purpose of bringing legal actions against those infringers. During a recent litigation with Verizon (an ISP) relating to the DMCA subpoena process, Verizon conceded that, as an alternative to the DMCA process, Plaintiffs could file "Doe" lawsuits and issue Rule 45 subpoenas to ISPs to obtain the true identities of infringing subscribers.

---

[1] ISPs own or are assigned certain blocks or ranges of IP addresses. An ISP assigns a particular IP address in its block or range to a subscriber when that subscriber goes "online."

**DECLARATION OF CARLOS LINARES IN SUPPORT OF EX PARTE APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY**

1

**The RIAA's Identification of the Infringers in This Case**

2

18.    In the ordinary course of investigating online copyright infringement, the RIAA

3

became aware that Defendant was offering files for download on various P2P networks. The user-

4

defined author and title of the files offered for download by Defendant suggested that many were

5

copyrighted sound recordings being disseminated without the authorization of the copyright owners.

6

The RIAA downloaded and listened to a representative sample of the music files being offered for

7

download by Defendant and was able to confirm that the files Defendant was offering for distribution

8

were illegal copies of sound recordings whose copyrights are owned by RIAA members. The RIAA

9

also recorded the time and date at which the infringing activity was observed and the IP address

10

assigned to Defendant at the time. See Complaint Exhibit A. The RIAA could not, however,

11

determine the physical location of the users or their identities. The RIAA could determine that

12

Defendant was using Santa Clara University internet service to distribute and make available for

13

distribution the copyrighted files.

14

19.    The RIAA also has collected a list of the files Defendant has made available for

15

distribution to the public. This list shows thousands of files, many of which are sound recording

16

(MP3) files that are owned by, or exclusively licensed to, Plaintiffs. Because of the voluminous nature

17

of the list, and in an effort not to overburden the Court with paper, I have not attached to this

18

Declaration that list. Such list will be made available to the Court upon request. Exhibit A to the

19

Complaint includes the username of the infringer if that was available, the identification number

20

assigned by MediaSentry for Defendant, and the number of audio files that were being shared by

21

Defendant at the time that the RIAA's agent, MediaSentry, observed the infringing activity.

22

**The Importance of Expedited Discovery in This Case**

23

24

20.    Obtaining the identity of copyright infringers on an expedited basis is critical to

25

stopping the piracy of the RIAA members' copyrighted works.

26

21.    First, every day that copyrighted material is disseminated without the

27

authorization of the copyright owner, the copyright owner is economically harmed. Prompt

28

7          DECLARATION OF CARLOS LINARES IN
SUPPORT OF EX PARTE APPLICATION FOR LEAVE
TO TAKE IMMEDIATE DISCOVERY

identification of infringers is necessary in order for copyright owners to take quick action to stop unlawful dissemination of their works and minimize their economic losses.

22.     Second, infringement often occurs with respect to sound recordings that have not yet been distributed publicly. Such infringement inflicts great harm on the initial market for new works. New recordings generally earn a significant portion of their revenue when they are first released, and copyright piracy during a recording's pre-release or early release period therefore deprives copyright owners of an important opportunity to reap the benefits of their labor.

23.     Third, without expedited discovery, Plaintiffs have no way of serving Defendant with the complaint and summons in this case. Plaintiffs do not have Defendant's name or address, nor do they have an e-mail address for Defendant.

24.     Fourth, and perhaps most critically, ISPs have different policies pertaining to the length of time they preserve "logs" which identify their users. ISPs keep log files of their user activities for only limited periods of time – which can range from as short as a few days, to a few months – before erasing the data they contain. If an ISP does not respond expeditiously to a discovery request, the identification information in the ISP's logs may be erased, making it impossible for the ISP to determine the identity of the infringer and eliminating the copyright owner's ability to take action to stop the infringement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on _September 15_ , 2007 in Washington, D.C.


_____
Carlos Linares

8       **DECLARATION OF CARLOS LINARES IN SUPPORT OF EX PARTE APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY**

1   JEFFREY G. KNOWLES (State Bar # 129754)
    JULIA D. GREER (State Bar # 200479)
2   ZUZANA J. SVIHRA (State Bar # 208671)
    COBLENTZ, PATCH, DUFFY & BASS, LLP
3   One Ferry Building, Suite 200
    San Francisco, California 94111
4   Telephone: (415) 391-4800
    Facsimile: (415) 989-1663
5
    Attorneys for Plaintiffs
6   MAVERICK RECORDING CO.; WARNER BROS.
    RECORDS INC.; ARISTA RECORDS, INC.; VIRGIN
7   RECORDS AMERICA, INC.; UMG RECORDINGS, INC.;
    INTERSCOPE RECORDS; BMG MUSIC; SONY MUSIC
8   ENTERTAINMENT INC.; ATLANTIC RECORDING
    CORP.; MOTOWN RECORD COMPANY, L.P.; and
9   CAPITOL RECORDS, INC.

10                      UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13   MAVERICK RECORDING COMPANY, a          CASE NO. C-04-1135 MMC
     California joint venture; WARNER BROS.
14   RECORDS INC., a Delaware corporation;   [PROPOSED] ORDER GRANTING
     ARISTA RECORDS, INC., a Delaware        PLAINTIFFS' MISCELLANEOUS
15   corporation; VIRGIN RECORDS AMERICA,    ADMINISTRATIVE REQUEST FOR
     INC., a California corporation; UMG      LEAVE TO TAKE IMMEDIATE
16   RECORDINGS, INC., a Delaware            DISCOVERY
     corporation; INTERSCOPE RECORDS, a
17   California general partnership; BMG MUSIC,
     a New York general partnership; SONY
18   MUSIC ENTERTAINMENT INC., a
     Delaware corporation; ATLANTIC
19   RECORDING CORPORATION, a Delaware
     corporation; MOTOWN RECORD
20   COMPANY, L.P., a California limited
     partnership; and CAPITOL RECORDS, INC.,
21   a Delaware corporation,

22              Plaintiffs,

23        vs.

24   DOES 1 - 4,

25              Defendants.

26

27

28

COBLENTZ, PATCH, DUFFY & BASS, LLP
One Ferry Building, Suite 200, san francisco, ca 94111-4213
(415) 391-4800  •  (415) 989-1663

1      Upon the Miscellaneous Administrative Request of Plaintiffs For Leave To Take

2  Immediate Discovery, the Declaration of Jonathan Whitehead and the exhibit thereto, Plaintiffs'

3  Request for Judicial Notice, and the Declaration of Zuzana J. Svihra, it is hereby:

4      ORDERED that Plaintiffs may serve immediate discovery on the University of

5  California, Berkeley to obtain the identity of each Doe Defendant by serving a Rule 45 subpoena

6  that seeks information sufficient to identify each Doe Defendant, including the name, address,

7  telephone number, e-mail address, and Media Access Control addresses for each Defendant.

8      IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in

9  response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting

10 Plaintiffs' rights under the Copyright Act.

11      Without such discovery, Plaintiffs cannot identify the Doe Defendants, and thus

12 cannot pursue their lawsuit to protect their copyrighted works from infringement.

13

14 Dated:_____April 28, 2004_____        James Larson U.S. Magistrate Judge

15                                        ~~United States District Judge~~

16

17

18

19

20

21

22

23

24

25

26

27

28

COBLENTZ, PATCH, DUFFY & BASS, LLP
One Ferry Building, Suite 200, san francisco, ca 94111-4213
(415) 391-4800  •  (415) 989-1663

1  Matthew Franklin Jaksa (CA State Bar No. 248072)
   HOLME ROBERTS & OWEN LLP
2  560 Mission Street, 25th Floor
   San Francisco, CA  94105-2994
3  Telephone:  (415) 268-2000
   Facsimile:   (415) 268-1999
4  Email:       matt.jaksa@hro.com
5
   Attorneys for Plaintiffs,
6  ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION;
   BMG MUSIC; CAPITOL RECORDS, INC.; ELEKTRA
7  ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE
   RECORDS LLC; MAVERICK RECORDING COMPANY; MOTOWN
8  RECORD COMPANY, L.P.; PRIORITY RECORDS LLC; SONY BMG
   MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN
9  RECORDS AMERICA, INC.; and WARNER BROS. RECORDS INC.
10
                    UNITED STATES DISTRICT COURT
11                  EASTERN DISTRICT OF CALIFORNIA
12
   ARISTA RECORDS LLC, a Delaware limited liability      CASE NO. 07-1641 LKK EFB
13 company; ATLANTIC RECORDING
   CORPORATION, a Delaware corporation; BMG             **ORDER GRANTING EX PARTE**
14 MUSIC, a New York general partnership; CAPITOL       **APPLICATION FOR LEAVE TO TAKE**
   RECORDS, INC., a Delaware corporation; ELEKTRA       **IMMEDIATE DISCOVERY**
15 ENTERTAINMENT GROUP INC., a Delaware
   corporation; INTERSCOPE RECORDS, a California
16 general partnership; LAFACE RECORDS LLC, a
   Delaware limited liability company; MAVERICK
17 RECORDING COMPANY, a California joint venture;
   MOTOWN RECORD COMPANY, L.P., a California
18 limited partnership; PRIORITY RECORDS LLC, a
   California limited liability company; SONY BMG
19 MUSIC ENTERTAINMENT, a Delaware general
   partnership; UMG RECORDINGS, INC., a Delaware
20 corporation; VIRGIN RECORDS AMERICA, INC., a
   California corporation; and WARNER BROS.
21 RECORDS INC., a Delaware corporation,
                          Plaintiffs,
22
23            v.
24 DOES 1-16,
25                  Defendants.
26
27
28

[Proposed] Order Granting Ex Parte Application for Leave to Take Immediate Discovery
Case No.
#31640 v1

1          Upon the Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery,

2    the Declaration of Carlos Linares, and the accompanying Memorandum of Law, it is hereby

3    ORDERED that Plaintiffs may serve immediate discovery on University of California, Davis to

4    obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that seeks documents that

5    identify each Doe Defendant, including the name, current (and permanent) addresses and telephone

6    numbers, e-mail addresses, and Media Access Control addresses for each Defendant.

7          Although parties must generally meet and confer prior to seeking expedited

8    discovery, that requirement may be dispensed if good cause is shown. *See* Fed. R. Civ. P. 26(d);

9    *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002).  Here, the

10    plaintiffs have presented evidence that the subpoena is necessary to identify the defendants, serve

11    them with the complaint and summons, and prosecute their claims of copyright infringement. *See*

12    *Gillespie v. Civletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("where the identity of alleged defendants

13    will not be known prior to the filing of a complaint . . . . the plaintiff should be given an opportunity

14    through discovery to identify the unknown defendants, unless it is clear that discovery would not

15    uncover the identities, or that the complaint would be dismissed on other grounds."). Plaintiffs have

16    further averred that records kept by internet service providers ("ISP") such as the University of

17    California, Davis, are regularly destroyed, sometimes on a daily or weekly basis. *See* Linares

18    Declaration, at ¶ 24.  Based on the foregoing, the court finds that plaintiffs have demonstrated good

19    cause for the expedited discovery.

20          The disclosure of this information is ordered pursuant to 20 U.S.C. § 1232g(b)(2)(B).

21    Consistent with that provision, if and when the University of California, Davis is served with a

22    subpoena, it shall, within five business days, give written notice to the subscribers whose identities

23    are to be disclosed in response to the subpoena.  Such written notice may be achieved by messages

24    sent via electronic mail.  If the University of California, Davis, and/or any defendant wishes to move

25    to quash the subpoena, they shall do so before the return date of the subpoena.

26

27

28

[Proposed] Order Granting Ex Parte Application for Leave to Take Immediate Discovery
Case No.
#31640 v1

1          IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in

2    response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting

3    Plaintiffs' rights under the Copyright Act.

4

5    Dated:    August 23, 2007.

6                                                        EDMUND F. BRENNAN

7                                                        UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                2

FILED

2007 APR 23  PM 1:19

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; UMG RECORDINGS, INC., a Delaware corporation; ARISTA RECORDS LLC, a Delaware limited liability company; CAPITOL RECORDS, INC., a Delaware corporation; WARNER BROS. RECORDS INC., a Delaware corporation; INTERSCOPE RECORDS, a California general partnership; PRIORITY RECORDS LLC, a California limited liability company; ATLANTIC RECORDING CORPORATION, a Delaware corporation; FONOVISA, INC., a California corporation; MAVERICK RECORDING COMPANY, a California joint venture; MOTOWN RECORD COMPANY, L.P., a California limited partnership; ELEKTRA ENTERTAINMENT GROUP INC., a Delaware corporation; BMG MUSIC, a New York general partnership; VIRGIN RECORDS AMERICA, INC., a California corporation; and LAFACE RECORDS LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br> DOES 1 - 16, <br><br> Defendants. | CASE NO. '07 CV 0581 BTM AJB <br><br> [PROPOSED] ORDER GRANTING PLAINTIFFS' *EX PARTE* APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY |

1      Upon the Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery, the

2   Declaration of Carlos Linares, and the accompanying Memorandum of Law, it is hereby:

3      ORDERED that Plaintiffs may serve immediate discovery on SBC Internet Services, Inc. to

4   obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that seeks documents that

5   identify each Doe Defendant, including the name, current (and permanent) addresses and telephone

6   numbers, e-mail addresses, and Media Access Control addresses for each Defendant. The disclosure

7   of this information is ordered pursuant to 47 U.S.C. § 551(c)(2)(B).

8      IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in response to the

9   Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting Plaintiffs' rights under

10   the Copyright Act.

11

12   DATED: _4-19-07_              By: _____
                                        United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

04-CV-00960-IFP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

UMG RECORDINGS, INC., a Delaware
corporation; ATLANTIC RECORDING
CORPORATION, a Delaware corporation;
WARNER BROS. RECORDS INC., a
Delaware corporation; SONY MUSIC
ENTERTAINMENT INC., a Delaware
corporation; BMG MUSIC, a New York
general partnership; and VIRGIN
RECORDS AMERICA, INC., a California
corporation,

                    Plaintiffs,

    v.

DOES 1 - 2,

                    Defendants.

No. C04- 0960 (c)-L

[PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION FOR LEAVE TO
TAKE IMMEDIATE DISCOVERY

Upon the Motion of Plaintiffs for Leave to Take Immediate Discovery and the

supporting Memorandum of Law, and the declaration of Jonathan Whitehead and the

exhibit thereto, it is hereby:

ORDERED that Plaintiffs may serve immediate discovery on Microsoft Corporation

to obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that seeks

information sufficient to identify each Doe Defendant, including the name, address,

telephone number, e-mail address, and Media Access Control addresses for each Defendant.

[PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION FOR LEAVE TO
TAKE IMMEDIATE DISCOVERY
Page 1

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE, WA 98104
T 206 516 3800  F 206 516 3888

1   IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in

2   response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of

3   protecting Plaintiffs' rights under the Copyright Act.

4

5   Dated: _May 14, 2004_          _MMS Casnik_

6                                  United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

[PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION FOR LEAVE TO
TAKE IMMEDIATE DISCOVERY
Page 2

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE, WA 98104
T 206 516 3800  F 206 516 3888

1

2

3

4

5

6

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAY 10 2004

JAMES R. LARSEN, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

13

14

15

16

17

18

19

LOUD RECORDS, LLC, a
Delaware corporation; WARNER
BROS. RECORDS INC., a
Delaware corporation; ATLANTIC
RECORDING CORPORATION, a
Delaware corporation; VIRGIN
RECORDS AMERICA, INC., a
California corporation; PRIORITY
RECORDS LLC, a California
limited liability company;
ELEKTRA ENTERTAINMENT
GROUP INC., a Delaware
corporation; BMG RECORDINGS,
INC, a Delaware corporation;
ARISTA RECORDS, INC., a
Delaware corporation; BMG
MUSIC, a New York general
partnership; SONY MUSIC
ENTERTAINMENT INC., a
Delaware corporation; MAVERICK
RECORDING COMPANY, a
California joint venture; and
CAPITOL RECORDS, INC., a
Delaware corporation,

20

        Plaintiffs,

   v.

21

DOES 1-5,

22

        Defendants.

NO.  CV-04-0134-RHW

**ORDER GRANTING PLAINTIFFS'
MOTION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY**

23

24

25

26

27

28

    Before the Court is Plaintiffs' Motion for Leave to Take Immediate

Discovery (Ct. Rec. 7).  The Plaintiffs, members of the Recording Industry

Association of America, Inc. ("RIAA"), have filed a complaint alleging that DOES

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY * 1

1  1-5 illegally engaged in uploading and downloading copyrighted recordings
2  through www.KaZaA.com, a peer to peer ("P2P") internet service (Ct. Rec. 1).
3  While Plaintiffs are unable to identify the Does, they collected records of
4  Defendants' Internet Protocol ("IP") address, the times the downloads or uploads
5  took place, and information regarding the specific recordings that were
6  downloaded or uploaded. The Plaintiffs were able to ascertain from Defendants'
7  IP addresses that they were utilizing Gonzaga University as their Internet Service
8  Provider ("ISP"). Plaintiffs seek statutory damages under 17 U.S.C. § 504(c),
9  attorneys fees and costs pursuant to 17 U.S.C. § 505, and injunctive relief under
10 17 U.S.C. §§ 502 and 503.
11       In their Motion for Leave to Take Immediate Discovery, the Plaintiffs seek
12 leave to serve Gonzaga University, the ISP for Does 1-5, with a Rule 45 Subpoena
13 Duces Tecum, requiring Gonzaga University to reveal the Defendant's names,
14 addresses, email addresses, telephone number, and Media Access Control
15 ("MAC") addresses.
16       The Ninth Circuit has held that "where the identity of alleged defendants
17 will not be known prior to the filing of a complaint . . . . the plaintiff should be
18 given an opportunity through discovery to identify the unknown defendants,
19 unless it is clear that discovery would not uncover the identities, or that the
20 complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d
21 637, 642 (9th Cir. 1980). Presumably, the discovery device anticipated by this
22 ruling was Rule 45, under which a party may compel a nonparty to produce
23 documents or other materials that could reveal the identities. *See Pennwalt Corp.*
24 *v. Durand-Wayland, Inc.*, 708 F.2d 492 (9th Cir. 1983). The Court finds that this
25 instance presents the very situation indicated by *Gillespie*. The Plaintiffs' case
26 relies on the disclosure of the Does' identities, and those identities are likely
27 discoverable from a third party.
28       Under Rule 26(d), Rule 45 subpoenas should not be served prior to a Rule

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY * 2

1   26(f) conference unless the parties can show good cause. Fed. R. Civ. P. 26(d) ("a
2   party may not seek discovery from any source before the parties have conferred as
3   required by Rule 26(f) . . . . [u]nless the court upon motion . . . . orders
4   otherwise"); *see Semitool, Inc. V. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-
5   76 (N.D. Cal. 2002). The Plaintiffs have presented compelling evidence that the
6   records kept by ISP providers of IP addresses are regularly destroyed. Thus, good
7   cause has been shown.
8        Accordingly, **IT IS ORDERED** that:
9        1.   Plaintiffs' Motion for Leave to Take Immediate Discovery (Ct. Rec.
10  7) is **GRANTED.**
11       2.   Plaintiffs are **GIVEN LEAVE** to serve immediate discovery on
12  Gonzaga University to obtain the identity of each Doe Defendant by serving a
13  Rule 45 subpoena duces tecum that seeks each Doe Defendants' name, address,
14  telephone number, email address, and Media Access Control address. As agreed
15  by Plaintiffs, this information disclosed will be used solely for the purpose of
16  protecting their rights under the copyright laws.
17       3.   Plaintiffs are **ORDERED** to review Local Rule 7.1(g)(2) regarding the
18  citation of unpublished decisions. All unpublished decisions cited to the Court
19  have been disregarded.
20       **IT IS SO ORDERED.** The District Court Executive is hereby directed to
21  enter this order and to furnish copies to counsel of record.
22       **DATED** this _10_ day of May, 2004.
23
24
25                    ROBERT H. WHALEY
                      United States District Judge
26
27  Q:\Civil\2004\Loud Records\Loud.immediatediscovery.order.wpd
28

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY * 3

Received 04/02/2004 04:25PM in 01:28 from 213 894 1815 to  on line [7] for FAX3 * Pg 2/3
04/02/04  FRI 17:22 FAX 213 894 1815    U.S DISTRICT COURT                          ☑002

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

CIVIL MINUTES - GENERAL

Case No. CV 04-1962 ABC (AJWx)                    Date: April 2, 2004

Title: LONDON-SIRE RECORDS, INC., et. al., v. DOES 1-4
================================================
PRESENT:

HON. ANDREW J. WISTRICH, MAGISTRATE JUDGE

| Ysela Benavides | |
| --- | --- |
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:
None Present                             None Present

## ORDER REGARDING PLAINTIFFS' EX PARTE APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY

Plaintiffs are thirteen record companies who have filed a lawsuit against four unnamed "doe" defendants for alleged copyright infringement. Plaintiffs filed a motion for leave to take immediate discovery on March 23, 2004. [Notice of Ex Parte Application for Leave to Take Immediate Discovery ("Notice") filed March 23, 2004]. Plaintiffs allege that defendants, using an online peer-to-peer ("P2P") media distribution system, made available for distribution, and in fact distributed, copyrighted songs without license or other authority to do so, thereby infringing plaintiffs' copyrights. [See Memorandum of Law in Support of Ex Parte Application For Leave to Take Immediate Discovery ("Memorandum") filed March 23, 2004, at 2]. Plaintiffs have acquired the Internet Protocol ("IP") addresses assigned to each of the four defendants on the dates and times of the infringing activity. [Memorandum 2]. Using a public database, plaintiffs determined that the subject IP addresses belong to the University of Southern California ("USC"). [Memorandum 2-3]. As an Internet Service Provider ("ISP"), USC maintains a subscriber activity log indicating which of its subscribers were assigned the IP addresses in question on the relevant dates and times. [Memorandum 3]. In plaintiffs' experience, most ISPs maintain subscriber activity logs for only a short period of time before destroying the information contained in the logs. [Memorandum 3]. From the subscriber logs, USC can use the IP addresses and temporal information provided by plaintiffs to identify the true names, street addresses, phone numbers, e-mail addresses, and Media Access Control ("MAC") addresses for each defendant. [Memorandum 3]. Plaintiffs ask this Court to allow immediate issuance of a subpoena directing USC to produce defendants' names and the other personal information described above so that plaintiffs may contact defendants in an attempt to negotiate a resolution to plaintiffs' claims, or failing that, to add defendants as named parties to this litigation.

Received 04/02/2004 04:25PM in 01:28 from 213 894 1815 to  on line [7] for FAX3 * Pg 3/3
04/02/04  FRI 17:22 FAX 213 804 1815    U.S DISTRICT COURT                    ☒003

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES--GENERAL

Generally, parties must meet and confer prior to seeking expedited discovery. See Fed. R. Civ. P. 26(f). That requirement, however, may be dispensed with if good cause is shown. See Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-76 (N.D. Cal. 2002). Plaintiffs have shown good cause. The true identities of defendants are unknown to plaintiffs, and this litigation cannot proceed without discovery of defendants' true identities. [See Memorandum 7-9].

Subject to the following qualifications, plaintiffs' ex parte application for leave to take immediate discovery is granted.

If USC wishes to file a motion to quash the subpoena or to serve objections, it must do so before the return date of the subpoena, which shall be no less than twenty-one (21) days from the date of service of the subpoena. Among other things, USC may use this time to notify the subscribers in question.

USC shall preserve any subpoenaed information or materials pending compliance with the subpoena or resolution of any timely objection or motion to quash.

Plaintiffs must serve a copy of this order on USC when they serve the subpoena.

Any information disclosed to plaintiffs in response to the Rule 45 subpoena must be used by plaintiffs solely for the purpose of protecting plaintiffs' rights under the Copyright Act as set forth in the complaint.


**IT IS SO ORDERED.**


cc:    Parties


MINUTES FORM 11                                    Initials of Deputy Clerk_____
CIVIL-GEN

Received 03/30/2004 09:44AM in 02:06 on line [11] for RHARRIS * Pg 2/3

1

2

3

4

5

6

7

8

9

10

11

12

13

```
_____
| / FILED _____ .ODGED       |
|  _ RECEIVED _____ .COPY      |
|                               |
|   [  MAR 3 0 2004  ]          |
|                               |
|  CLERK U S DISTRICT COURT     |
|   DISTRICT OF ARIZONA         |
| BY _____ DEPUTY      |
|_____|
```

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Interscope Records, et al.,                    )
                                               )   No. CV-04-131 TUC - JM
                    Plaintiffs,                )
                                               )
v.                                             )   **ORDER**
                                               )
Does 1 - 4,                                    )
                                               )
                    Defendants.                )

14    Pending before the Court is the Plaintiffs' *ex parte* Motion for Leave to Take

15 Immediate Discovery [Docket No. 2]. Upon consideration of the Motion and the supporting

16 Memorandum of Law, and the declaration of Jonathan Whitehead and the exhibit attached

17 thereto, it is hereby:

18    ORDERED that Plaintiffs' Motion for Leave to Take Immediate Discovery [Docket

19 No. 2] is GRANTED;

20    IT IS FURTHER ORDERED that Plaintiffs may serve immediate discovery on the

21 University of Arizona to obtain the identity of each Doe Defendant by serving a Rule 45

22 subpoena that seeks information sufficient to identify each Doe Defendant, including the

23 name, address, telephone number, e-mail address, and Media Access Control addresses for

24 each Defendant;

25    IT IS FURTHER ORDERED that any information disclosed to Plaintiffs in response

26 to the Rule 45 subpoena shall be used by Plaintiffs solely for the purpose of protecting

27 Plaintiffs' rights under the Copyright Act as set forth in the Complaint;

28

Received 03/30/2004 09:44AM in 02:06 on line [11] for RHARRIS * Pg 3/3

1       IT IS FURTHER ORDERED that, if and when the University of Arizona is served

2    with a subpoena, within five (5) business days thereof it shall give written notice, which can

3    include use of e-mail, to the subscribers whose identities are to be disclosed in response to

4    the subpoena. If the University of Arizona and/or any Defendant wishes to move to quash

5    the subpoena, they shall do so before the return date of the subpoena, which shall be twenty-

6    five (25) business days form the date of service;

7       IT IS FURTHER ORDERED that, if and when the University of Arizona is served

8    with a subpoena, the University of Arizona shall preserve the data and information sought

9    in the subpoena pending resolution of any timely filed motion to quash;

10       IT IS FURTHER ORDERED that counsel for Plaintiffs shall provide a copy of this

11    Order to the University of Arizona when the subpoena is served.

12       Dated this _25_ day of March, 2004.

JACQUELINE MARSHALL
UNITED STATES MAGISTRATE JUDGE

2